FILED

1   **EPPSTEINER & FIORIA ATTORNEYS, LLP**
    Stuart M. Eppsteiner (CA SBN 098973)
2   Email: sme@eppsteiner.com
    Andrew J. Kubik (CA SBN 246902)
3   Email: ajk@eppsteiner.com
    Zelekha Amirzada (CA SBN 250419)
4   Email: za@eppsteiner.com
    12555 High Bluff Dr., Ste. 155
5   San Diego, CA 92130
    Tel. (858) 350-1500
6   Fax (858) 350-1501

2011 JUN -9 PH 3: 05

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
SANTA ANA

BY_____

7   Counsel for Plaintiffs and the Class

8

9          **IN THE UNITED STATES DISTRICT COURT**

10          **CENTRAL DISTRICT OF CALIFORNIA**

11              **SOUTHERN DIVISION**

12

| | |
|---|---|
| 13  PATTY NEMETH, | Case No. **SACV 11-00864 JVS (RNBx)** |
| 14 | |
| 15       PLAINTIFF, | **CLASS ACTION COMPLAINT** |
| 16   vs. | [Jury Trial Demanded] |
| 17  ELECTROLUX HOME PRODUCTS, INCORPORATED, | |
| 18 | |
| 19       DEFENDANT. | |

20

21

22      Plaintiff Patty Nemeth by and through her undersigned counsel, individually

23  and on behalf of all others similarly situated in the State of California (the "Class"),

24  alleges the following facts and claims upon personal knowledge and upon

25  information and belief as to all other matters as follows:

26

27  ///

28

                        1
            CLASS ACTION COMPLAINT

163814

**JURISDICTION AND VENUE**

1.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, the proposed Class consists of more than 100 members, and this is a class action in which the members of the proposed Class and Defendant are citizens of different states.

2.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims took place within this district.

**INTRODUCTION**

3.      This action is brought to remedy violations of law in connection with Defendant's design, manufacture, sales, performance, servicing and warranting of its Electrolux and Frigidaire brand French-door bottom-mount refrigerator/freezers with ice makers mounted in the fresh food compartment ("Fridge" or "Fridges"). The Fridges' relevant design, parts, pieces, operation and materials are the same. There are no differences in the Fridges that relate to, arise from, or are relevant to the cause or effect of the Defects (defined below) at issue in this case. The Fridges sell for a retail price of $2,200 to $3,700.

4.      Plaintiff brings this class action on behalf of herself and all others similarly situated in the State of California against Defendant, Electrolux Home Products Incorporated ("Defendant" or "Electrolux" or "EHP"), seeking damages, restitution, and injunctive relief for the proposed Class as defined herein.

5.      Refrigerator/freezer combinations can generally be configured in four ways: 1) with two doors where the freezer compartment is on one side and the refrigerator compartment is on the other ("side-by-side"); 2) with two doors where the freezer compartment sits above the refrigerator compartment ("top-mount"); 3)

2
CLASS ACTION COMPLAINT

163814

with two doors where the freezer compartment sits below the refrigerator compartment ("bottom-mount"); and 4) same as a bottom-mount, but the refrigerator compartment has two side-by-side doors referred to as French doors ("French-door bottom-mount").

6.     According to the Association of Home Appliance Manufacturers, of which EHP is a member, the expected "useful life" of a bottom-mount refrigerator is 17 years.

7.     Traditionally, the ice maker in a refrigerator/freezer is engineered to work in the freezer compartment.  Such is the case for all four of the configurations described in the preceding paragraph.  However, the exception is where the French-door bottom-mount configuration has an ice-dispenser in the refrigerator door that allows a user to dispense ice without opening any of the refrigerator/freezer's doors. The door-mounted ice dispenser increases the price of the Fridge over one without the feature by $400 - $700.

8.     Because ice is dispensed from the refrigerator compartment, the ice maker must also be located in the refrigerator compartment. Naturally, the ice maker requires much colder temperatures than the ambient temperature in the refrigerator compartment to cool water to a temperature at or below 32°F and must be engineered to produce ice in relatively warmer surroundings. Since cold air exists in the freezer compartment, some manufactures of refrigerators, such as LG Electronics, have opted to channel the cold air from the freezer to the ice maker in the refrigerator compartment via air ducts and vents, as depicted below:

CLASS ACTION COMPLAINT

163814

**Figure 1. LG Bottom-Mount Refrigerator/Freezer with Ice Dispenser**

**Figure 2. LG Cabinet Vents View**





**Figure 3. LG Door-Mounted Ice Maker Compartment View**

**Figure 4. LG Ice Maker Compartment Vents View**





163814

9.    Electrolux, instead of using air ducts, has attempted to make ice and cool the ice maker by using a liquid refrigerant that is channeled from the compressor compartment to the ice maker inside narrow-diameter metal tubing.  Once in the ice maker, the refrigerant serves two purposes.  The refrigerant cools the air in the ice maker using a small radiator. The refrigerant also passes through a series of metal fingers that are submerged into the water of the ice mold and causes the water around the fingers to freeze (see Fig. 8).  By eliminating air ducts from the refrigerator cabinet walls, Electrolux creates more storage space in the refrigerator section of its Fridges which allows Electrolux to advertise that its Fridges have larger capacity than its competitors.

**Figure 5. EHP Ice Maker View**



CLASS ACTION COMPLAINT

163814

**Figure 6. EHP Ice Maker Interior with Cover and Bin Removed**



**Figure 7. EHP Ice Maker Radiator View**



6
CLASS ACTION COMPLAINT

163814

**Figure 8. EHP Ice Maker Mold Fingers View**



10.   Under Electrolux's design, the flow of refrigerant for the ice mold fingers and the ice maker compartment is controlled by an electronic expansion valve using an electronic control panel ("Control Panel").   The Control Panel actuates the electronic expansion valve to allow refrigerant to flow through the ice mold fingers which freezes the ice in the mold. Then the refrigerant flows through the Ice Maker compartment radiator (see Fig. 7) which is supposed to keep the ice cubes frozen.   Once the compartment is sufficiently cool, the refrigerant then returns back to the compressor compartment.

11.   The Control Panel, however, fails to direct refrigerant to the ice maker, which causes the ice maker to be too warm to produce ice.   Therefore the Fridges' Ice Makers do not produce **"up to 10 lbs. of ice in 24 hours"** or **"9 pounds of ice every 24 hours,"** or **"fill an ice bin in about eight (8) hours"** which performance is represented and warranted by Electrolux.   Most Fridges make no ice at all.

163814

1   Indeed, in many cases consumers come home to find puddles of water on their
2   floors beneath their Fridges and damaged cabinets and/or flooring adjacent to their
3   Fridges as a result of the ice makers malfunctioning and causing formed ice to melt.

4       12. Upon complaining to Electrolux about their defective ice makers,
5   consumers are denied a good faith repair. Electrolux will dispatch service
6   technicians to the consumers' homes, and instruct the technicians to make repairs
7   that it knows will not fix the defective ice makers. This is because Electrolux has
8   not been able to implement a solution that keeps the ice maker compartment of the
9   Fridges sufficiently cold to make ice and keep it from melting. Instead, Electrolux
10  requires each consumer to endure up to three more attempts at repair that Electrolux
11  knows are futile in an attempt to have the warranty expire and be able to deny
12  further claims by those consumers.

13      13. Following numerous failed attempts at repair, Electrolux will sometimes
14  offer consumers an extended warranty or to replace the Fridges with replacement
15  defective Fridges. For some consumers who manage to exhaust Electrolux's futile
16  repair attempts within the warranty period, Electrolux may sometimes offer only
17  partial relief (i.e., 60-70% credit toward the purchase of another Electrolux Fridge
18  or a partial refund of the consumers' purchase price of 60-70%), far below the
19  refund amount mandated by the Song-Beverly Consumer Warranty Act, in response
20  to repeated demands from consumers for full refunds.

21      14. The Fridges are defective because their Control Panels fail to adequately
22  direct sufficient refrigerant to the ice makers in order to make and preserve ice. An
23  ice maker that does not make and preserve ice does not perform the function for
24  which it was intended. Electrolux, despite its numerous attempts, has not been able
25  to conform the Fridges to its express and implied warranties.

163814

15.   Electrolux did not, and does not, disclose either prior to, or at the time of purchase, any information to Plaintiff or Class members regarding the Fridges' defective Control Panels.

## THE PARTIES

16.   Electrolux Home Products Incorporated ("EHP") is a Delaware corporation and maintains its principal place of business at 250 Bobby Jones Expressway, Martinez, Georgia 30907. The North American corporate office operations for EHP are in the process of being consolidated to a new headquarters located at 10200 David Taylor Drive, Charlotte, North Carolina 28262.

17.   EHP is a subsidiary of The Electrolux Group which is the second largest appliance manufacturer in the world and is comprised of approximately 150 companies with operations in over 50 countries. The parent company of the Electrolux Group is AB Electrolux, a public Swedish limited liability company. The company's shares are listed on the Nasdaq OMX Stockholm exchange.

18.   Plaintiff Patty Nemeth is a citizen of California and resides in Laguna Niguel, California.

## FACTUAL BACKGROUND

19.   Defendant is in the business of manufacturing, producing, distributing, and/or selling Fridges throughout the United States under the brand names Electrolux and Frigidaire. The Fridges sold under these brands are substantially identical, and Plaintiff is informed and believes the brands of the Fridges are and were manufactured in the same facilities in Juarez, Mexico.

20.   Electrolux manufactured, produced, and/or distributed Fridges for sale by its network of authorized dealers in the United States, such as ABT, Best Buy, Lowe's, Pacific Sales, Sears, and other large and medium-sized retail chains, as well as through independently-owned distributors.

163814

1    21.    Frigidaire-branded Fridges are sold in the mass market segments of the
2  appliance market, and Electrolux-branded Fridges are sold in the premium segment
3  of the appliance market.

4    22.    On or about July 3, 2010, Ms. Nemeth purchased a Fridge (model
5  number EI23BC56IS; serial number 4A00403876) from Howard's Appliance
6  ("Howard's") in Laguna Hills, California for approximately $3,000, plus tax and
7  additional charges.

8    23.    Ms. Nemeth physically analyzed the Fridge on the showroom floor at
9  Howard's. She opened the Fridge doors and observed the location and size of the
10 ice maker. On the ice maker she observed and read a label that represented that the
11 ice maker would make "up to 10 lbs. of ice in 24 hours." She also observed that the
12 ice maker made bullet-shaped ice cubes. The Howard's salesperson assisting her
13 with her purchase confirmed that Ms. Nemeth "would get a lot of ice" from the
14 Electrolux ice maker. At no time at the point of purchase did Electrolux or its
15 agent, Howard's, disclose that the ice maker would malfunction as a result of a
16 defective Control Panel.

17   24.    After considering all of her options, Ms. Nemeth purchased the
18 Electrolux Fridge because of its ice maker feature and its ability to make more ice
19 than other comparable refrigerator/freezers. Had she known that the Fridges had
20 defective Control Panels that caused the ice makers not to be able to produce up to
21 10 pounds of ice in 24 hours, or fail to make and preserve ice cubes, she would not
22 have purchased her Fridge and would have opted for a side-by-side design instead.

23   25.    Within the first month of owning her Fridge, the Fridge's ice maker
24 stopped producing ice. On or about August 26, 2010, Ms. Nemeth first notified
25 Howard's that her ice maker had malfunctioned. A Howard's repairman stated to
26 Ms. Nemeth that the malfunctioning ice maker was a "known issue" with Electrolux
27 Fridges.

28

26.     In total, Ms. Nemeth's Fridge incurred 10 service calls by Howard's repairmen who attempted five repairs (see Ex. 1 for service history records).  On September 9, 2010, a Howard's repairman installed an "Ice Maker Service Kit" (Part number 5303918495) under warranty. However, the ice maker continued to malfunction.

27.     In September of 2010, Ms. Nemeth complained directly to Electrolux about the malfunctioning ice maker.  Contrary to the mandates of the Song-Beverly Consumer Warranty Act, Electrolux stated to her that it had a right to attempt as many repairs as it wanted on her Fridge.

28.     On October 12, 2010, Howard's installed a "Board Kit" (Part number 5303918447).  Ms. Nemeth's Ice Maker continued to malfunction.

29.     Ms. Nemeth complained again to Howard's about the malfunctioning ice maker at the beginning of November 2010.  Electrolux instructed the Howard's repairman to conduct a "complete diagnostic test" on Ms. Nemeth's Fridge.  Several days following the diagnostic test, Ms. Nemeth's ice maker continued to malfunction.

30.     Around the middle of November 2010, Ms. Nemeth once again called Howard's to notify them about the malfunctioning Ice Maker. On December 16, 2010, a Howard's repairman, at the instruction of Electrolux, repaired the ice maker solenoid assembly (Part number 241675701), the main power control board (Part number 5304478376), and the weather stripping (Part number 240568606) under warranty. Ms. Nemeth's ice maker continued to malfunction and Electrolux had not conformed the Fridge to EHP's express and implied warranties.

31.     Ms. Nemeth complained again to Howard's about the malfunctioning ice maker at the beginning of January of 2011.  On January 28, 2011, at the instruction of Electrolux, a Howard's repairman installed another "Ice Maker Service Kit" (Part number 5303918495) which is believed to have included version

8.1 of the Control Panel, another main power control board (Part number 5304478376), as well as the board behind the front fascia controls (Part number 241836006). This was the last service performed on Ms. Nemeth's Fridge.

32.     Over 5 months have elapsed since Ms. Nemeth first gave notice to Electrolux under her warranty. The Fridge's ice maker continues to malfunction and does not produce as much ice as Electrolux warranted. Indeed, Ms. Nemeth's Fridge produces very little ice at all. Electrolux has not conformed the Fridge to the Written Warranty, Fact Warranties, or implied warranties.

33.     In response to Ms. Nemeth's demand that Electrolux replace her Fridge with one that conforms to the Written Warranties (defined below), Fact Warranties (defined below), and implied warranty of merchantability, Electrolux, in violation of the mandates of the Song-Beverly Consumer Warranty Act, only offered an extension of her Written Warranty by three years.

34.     Ms. Nemeth is a working mother. Each time a repair is attempted on her Fridge, she is required to take time off from work to allow the repairman into her home. Ms. Nemeth rejected Electrolux's offer as unfair, unreasonable, and illegal.

35.     Ms. Nemeth now brings this class action complaint seeking to recover the full relief afforded to her and those similarly situated under California's consumer protection statutes.

**Breach of Express and Implied Warranties**

36.     EHP provides express written warranties for Electrolux and Frigidaire branded Fridges, sold in the United States, against defects in materials and workmanship through its Electrolux Major Appliances North America Division. A copy of the Electrolux brand Fridge warranty is attached hereto as Exhibit 2. A copy of the Frigidaire brand Fridge warranty is attached hereto as Exhibit 3 (Exhibits 2 and 3 are collectively hereinafter referred to as "Written Warranties").

37.   The Electrolux brand Fridge warranty has two durations. For the first year from the original date of purchase, "Electrolux will repair or replace any parts of this appliance that prove to be defective in materials or workmanship."  For years two through five, "Electrolux will repair or replace any parts in the cabinet liner and sealed refrigeration system [compressor, condenser, evaporator, dryer or tubing] which prove to be defective in materials or workmanship."

38.   Electrolux also warrants that "[e]very Electrolux Major Appliance is guaranteed to be free of material defects or <u>component malfunctions</u>." (http://www.electroluxappliances.com/starwarranty).

39.   The Frigidaire brand Fridges' warranty states "from one year from your original date of purchase, Electrolux will pay all costs for repairing or replacing any parts of this appliance that prove to be defective in materials and workmanship."

40.   The Written Warranties warrant that the Fridges will be free of defects in materials and workmanship, as well as <u>component malfunctions</u>.  Under the list of 13 exclusions, exclusion number 7 excludes warranty coverage for "[s]ervice calls which do not involve malfunction or defect in materials or workmanship…" Therefore, by positive implication, component malfunctions are covered by the Written Warranties.

41.   Plaintiff relied on the Written Warranty and/or the Written Warranty became part of the basis of the bargain between Plaintiff and Electrolux in that she would not have purchased the Fridge had it not been offered with the Written Warranty.

42.   EHP has failed to satisfy its obligations under the Written Warranties by: not replacing the Fridges that it knows to have defective Control Panels; not conforming them to the Fact warranties; and/or not refunding consumers' purchase prices in amounts sufficient to comply with the Song-Beverly Act.

43.   The limitations on remedies contained in EHP's Written Warranties fail of their essential purpose and are unenforceable with respect to the defective

1  Control Panel. When Fridge owners notify Electrolux that their Fridges' ice makers

2  have malfunctioned, EHP attempts futile repairs in order to try to appease Fridge

3  owners long enough until the Express Warranty terms expire.

4      44.    For the same reason, to the extent there is any notice requirement

5  imposed by law, notice is excused because Defendant has (and had) actual

6  knowledge of defects in the Fridges that result in their failure to make ice or make

7  the amount of ice Electrolux warranted they would make; therefore notice to it has

8  been, is and will be futile, in that EHP is unable to cure the defective Control Panel.

9      45.    EHP also created warranties by affirmation of fact. EHP warrants both

10 on labels on the ice maker and inside the Fridge, **"Up to 10 pounds of filtered,**

11 **restaurant-quality ice in 24 hours…,"** **"Get Twice the ice,"** **"Twice the ice as**

12 **any refrigerator ice maker"** (see Fig. 10-12 below, and Ex. 5). EHP also created

13 warranties by affirmation of fact in the User and Care Guides/User Manuals that

14 accompany the Fridges at the time of purchase, such as in the March 2009 Edition

15 of the User and Care Guide (the edition accompanying Ms. Nemeth's model) in

16 which Electrolux states that the ice maker **"can completely fill an ice bin in about**

17 **eight (8) hours"** and **"produces approximately (9) pounds of ice every 24 hours**

18 **depending on usage conditions"** (See Ex. 4) (Electrolux's affirmations of fact

19 cited in this paragraph are collectively hereinafter referred to as "Fact Warranties").

20 EHP has failed to conform the Fridges to the Fact Warranties, thereby breaching the

21 Fact Warranties resulting in damages to Plaintiff Nemeth and Class Members.

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28

CLASS ACTION COMPLAINT

163814

**Figure 9**. Interior View Of Electrolux Brand Fridge With Numerous Labels



CLASS ACTION COMPLAINT

163814

**Figure 10. Label Affixed to Ice Maker Inside Fresh Food Compartment**



163814

**Figure 11**. Picture Board Located On Fridge Shelf



**Figure 12**. Brochure Located on Fridge Shelf (Full-sized copy attached as Ex. 5)



163814

46.     As part of the sale of each Fridge, Defendant warranted that the Fridges had ice makers of merchantable quality fit for the ordinary purpose for which they are used; i.e., to make and preserve ice.  However, the ice makers fail their intended purpose and would not pass without objection in the trade because they fail to produce ice at all, or in sufficient quantity to conform to their warranties.

47.     Electrolux receives customer service calls regarding its refrigeration products at its call center in Anderson, South Carolina.

48.     Upon information and belief, approximately fifty percent of the inbound calls to the call center relate to malfunctioning ice makers in the Fridges from consumers across the United States.

49.     Electrolux records details from the calls using a third-party software program called "ServiceBench." ServiceBench allows an Electrolux representative to store details about a customer such as the date of purchase, serial number, model number, personal contact information, and service history.

50.     Under the ServiceBench protocol and Electrolux's internal policies, a customer must first exhaust at least three attempts at repair before an Electrolux customer service employee may agree to offer a replacement product.  In the case of the Fridges, even though Electrolux knew that the Control Panel was defective and the cause of the malfunctioning ice maker, Electrolux would attempt futile repairs such as replacing the entire ice maker, replacing miscellaneous irrelevant parts such as the solenoid assembly, resetting the electronic system to factory default settings, and/or "reflashing" the Control Panel by connecting a laptop to an interface on the Fridge.

51.     Ultimately, when all of these efforts failed (as Electrolux knew they would and expected) and a consumer continued to complain, Electrolux would replace the Control Panel.  However, none of the "upgraded" versions of the Control Panel have stopped the ice maker from malfunctioning and enabled it to

1  conform to Electrolux's Written Warranty, Fact Warranties, or implied warranty of
2  merchantability.

3      52.    Even where Electrolux has replaced the defective Fridge with another
4  identical Fridge, the replacement Fridge is also defective because it contains the
5  same defective Control Panel that causes the ice maker to malfunction as described
6  above.

7      53.    Acknowledging that it has not developed a solution for the defective
8  Control Panel, Electrolux has began to pay partial refunds, and in some cases full
9  refunds, of the purchase price (minus taxes and installation, and disposal costs) of
10  the Fridge to Fridge owners who have exhausted every one of Electrolux's futile
11  attempts to repair and who repeatedly demanded that Electrolux refund their money
12  or threatened legal action.

13  **Electrolux's Omissions of Material Fact**

14      54.    Electrolux fails to disclose the material fact that the Fridges have
15  defective Control Panels that cause the ice makers to cease making ice or make less
16  ice than represented.

17      55.    Plaintiff now pleads her omission claims with particularity to satisfy
18  Federal Rule of Civil Procedure 9(b) and incorporates by reference all other
19  paragraphs herein.

20      56.    **WHO.** EHP is the entity responsible for failing to disclose the material
21  information to consumers who bought the Fridges.  Electrolux is also the entity
22  obligated, as alleged herein, to disclose the material information.

23      57.    **WHAT.** EHP failed to disclose the material fact that the Control Panel
24  is defective and will cause the ice maker to cease making ice or make less ice than
25  Electrolux represented the Fridges would make, which facts are contrary to
26  representations Electrolux made and still makes about the ice maker's performance

27
28

163814

1  such as: **"Get twice the ice," "up to 10 lbs of ice within 24 hours," "creates up to**
2  **9lbs./day of bullet-shaped cubes."**

3      58.   **WHEN.**   EHP fails to disclose the material facts at the point of
4  purchase in retail stores throughout California.   In the case of Ms. Nemeth,
5  Electrolux failed to disclose the material facts on July 3, 2010, when she physically
6  examined the Fridge, including opening its doors and observing the partial
7  representations listed in the preceding paragraph.

8      59.   **WHERE.**   EHP fails to disclose the material fact on labels and
9  advertising affixed to the ice maker on and/or inside display models, as well as
10  other labels and advertising found inside display models (such as the partial
11  representations detailed above) at the point of purchase in retail stores where the
12  Fridges are sold.   In the case of Plaintiff Nemeth, she observed and relied on the
13  omission of material facts at Howard's Appliance located in Laguna Hills,
14  California.

15      60.   **WHY and HOW**.  The fact that the Control Panel is defective is
16  material because a consumer who is paying $400 - $700 more for a Fridge with a
17  door-mounted ice dispenser would want to know whether the ice maker's control
18  panel is defective before deciding to buy the Fridge.  The omissions are misleading
19  because EHP makes several affirmative representations about the performance of
20  the Fridge's ice maker, but at the same time fails to disclose the fact that the Control
21  Panel is defective, and that it will cause the ice maker to not perform as represented
22  or to cease working altogether.

23      61.   Electrolux was obliged to disclose the material fact that the Control
24  Panel is defective and incurable because: a) it had exclusive knowledge of the
25  material facts not known to Plaintiff and Class members, since only Defendant had
26  access to the aggregate data from its retailers, its own tests, and complaints from its
27  customers; b) it actively concealed and suppressed the material facts from Plaintiff
28

163814

by not warning of the defective Control Panel at the time of purchase and by performing warranty and/or repair work that it knew would not cure the malfunctioning ice maker; c) the material facts are contrary to objectively verifiable partial representations made about the ice makers at the point of sale such as "**Twice the ice**," and "**Up to 10 pounds of ice in 24 hours**."

62.     Electrolux has gone to significant efforts to promote its ice maker and touts it as a major feature of the Fridges, including referring to the ice maker's performance on at least three separate labels or brochures found inside the Fridges on showroom floors in retail stores where the Fridges are sold.

63.     Electrolux filed an application to register the trademark "Perfect Ice" on December 22, 2009. The "Perfect Ice" trademark was registered on September 7, 2010. EHP describes the goods to be sold with the "Perfect Ice" trademark as "[i]ce machines sold as a component part of refrigerators and freezers; refrigerators; freezers."

## Electrolux's Knowledge and/or Reckless Disregard of the Defective Control Panel

64.     Electrolux is aware of the defective Control Panel and resulting malfunctioning ice makers. Indeed, the Internet is replete with references and complaints regarding the Fridges that mirror allegations in this Complaint. Relevant excerpts from a sampling of these complaints are set forth below:

| Source | Complaint |
| --- | --- |
| http://www.my3cents.com/userBlog.cgi?id=109236<br><br>Last Accessed: May 6, 2011 | I purchased the higher-end Electrolux CD FD refrigerator (with WAVE TOUCH) in July. Ice Maker issues: wet cubes, slow production, leaky, inefficient, started making noises, stopped working, new motor installed, stopped working AGAIN!! |
| http://curtosappliances.com/2010/10/02/are-electrolux-french-door-refrigerator-prone-to-problems<br><br>Last Accessed: May 6, | I purchased a French door stainless refrigerator in July 10. It was manufactured in January 10. It freezes up and quits working every 2 to 3 weeks. All three computers have been changed, the ice maker has been "updated" with many new parts. The result is the same… Not fixing the problem after 5 onsite |

163814

| | |
|---|---|
| 2011 | visits and countless calls. |
| http://www.buzzillions.com/...ctrolux-ei28bs56is-27-8cu-french-door-refrigerator-stainless-steel-reviews?prRo=5&reviewSortBy=lowestRatingFirst#bz-model-review-tabs-list<br><br>Last Accessed: May 6, 2011 | I bought a brand new Electrolux Fridge. The first one was bad from the beginning... ice maker didn't work but most of all the freezer gasket was broken and we didn't know it so we lost ALOT of food in both freezer and frig section. The fridge wouldn't go below 48 degrees so alot of food spoiled. Due to the gasket in the freezer breaking the entire freezer had "snow cone" ice crystals 1" thick. |
| http://www.buzzillions.com/...iews/electrolux-ei28bs56is-27-8cu-french-door-refrigerator-stainless-steel-reviews?reviewSortBy=lowestRatingFirst#bz-model-review-tabs-list<br><br>Last Accessed: May 6, 2011 | The ice maker has broken down twice... The process for a warranty claim is painful – even though I have registered 7 warranty calls I have to start from scratch every single time INCLUDING sending them a copy of my house possession papers. |
| http://www.complaintsboard.com/complaints/4000-refrigerator-no-ice-c407461.html<br><br>Last Accessed: May 6, 2011 | Purchased Electrolux French door refrigerator (Model #EW23BC70IS1) for about $4k on 7/10/2009. After less than 6 months...1st malfunction...freezer stopped working on 1/4/2010. 2nd time on 3/15/2010 and 3rd time on 12/27/2010. In between some ice and no ice, many flooding incidents and long periods without any ice at all. We have been very patient hoping new parts would permanently resolve the ice maker problem...this did not happen. After reading many other blogs and complaints regarding these refrigerators, there seem little point in a replacement as consumers still have the same complaints in 2011.  At this point we want a refund. |
| http://www.consumerreports.org/...ct-reviews/Refrigerators-Bottom-freezers/Electrolux/p/263_99025779-Wave-Touch-EW28BS71-IS.html<br><br>Last Accessed: May 6, 2011 | This fridge has been a nightmare. On our FIRST one ice cubes flew all over my new floor. Freezer temperature suddenly went up and all my food defrosted. Door did not close properly, flange broke off cause of poor design. In 6 months, had 8 service calls on it for various problems. Finally got it replaced. Seemed great for a week then water dripping from back of ice cube unit into fridge. Tech came and ordered part. One month later part comes and fixed?? No still leaking inside. Now notice water leaking from ceiling below fridge. When torn apart there is mould - this fridge had been leaking to the outside since it was installed! Now big bill for restoration. |
| http://www.consumerreports.org/...ct-reviews/Refrigerators-Bottom- | Purchased this for our new home. Whata disappointment, especially for the money. 7 trips by the repairman, starting after the first month of ownership. Water dispenser freezes up, then ice |

| | |
|---|---|
| freezers/Electrolux/p/263_99025779-Wave-Touch-EW28BS71-IS.html<br><br>Last Accessed: May 6, 2011 | maker spits ice all over floor. A lot has been done to the fridge...not sure what is original anymore...repairman had to wrap all parts in foam, but freezing up issue continued. He has been on with their tech support team on many occasions, and they always say..."hmm, ok try this...". Went through Thanksgiving and Christmas with no ice or water functionality. Now, just to let us know it is there, it has started to make a knocking noise every 30 minutes or so. Repairman feels sorry for us...yes all this is covered under original warranty, but Electrolux won't call this a lemon yet. They want us to continue to be their test case, at our inconvenience. Bottom line is looks can be very deceiving with this one. |
| http://www.sears.com/shc/s/p_10153_12605_04604870000P?prdNo=10&blockNo=10&blockType=G10<br><br>Last Accessed: May 6, 2011 | We passed on more reliable brands and chose this fridge for its design. Unfortunately it has been nothing but a disappointment. After no fewer than 6 service calls in the past year, our ice maker is STILL not working properly. I can assure you that our replacement will be a different brand - I won't ever buy Electrolux again due to both poor craftsmanship and abysmal customer service |
| http://www.amazon.com/...BC71IS-Counter-Depth-French-Door-Refrigerator/product-reviews/B002916U7K/ref=cm_cr_pr_hist_1?ie=UTF8&showViewpoints=0&filterBy=addOneStar<br><br>Last Accessed: May 6, 2011 | Today I am calling for third service due to no ice. First time, they replaced control panel with "newer" software panel (think it was version 8.0). Along with that, added a "chute" extension so that ice would not go flying all over the floor. Said there was nothing to do to fix the issue of warm water from the dispenser. Second repair was again to upgrade the control panel software version (now 8.1) as the icemaker just stopped producing, then started again 2 days later and took 3 days to fill up the measly container. Three days ago, it stopped again and was dripping water which overflowed to the floor. 24 hours later, we decided to try to just shut off the power and "reboot" it. 4 hours later, it started producing again. Another issue is that the cube ice option produces 2/3 crushed ice and 1/3 cubes. |

| http://www.amazon.com/re view/R1COHVRM4WQA XF /ref=cm_cr_pr_viewpnt#R 1COHVRM4WQAXF<br><br>Last Accessed: May 6, 2011 | We've had the refrigerator for several months. Tech guys have already been called out 3 times for the same issue....ice continues to drip from the ice maker-tray right down into the water/ice dispenser causing a continuous puddle of water on the "catch" tray. This problem does NOT go away even through twice they've changed the entire ice making mechanism. It appears that the ice doesn't maintain its temperature properly in the upper refrigerator portion of the unit, causing it to stick together and constantly form a drip. Besides this..... this beautiful frig makes enough ice for 2! We are a family of 5. At dinner time, we can never seem to get enough ice to fill our cups half way with ice (even if ice hasn't been used all day). Ice compartment is too small. FORGET having guests over..... I've been serving warm drinks after the 4th person! |
|---|---|

65.   Electrolux's ServiceBench call center warranty records also confirm Electrolux's knowledge.

66.   Electrolux failed to adequately design, test and manufacture the Fridges to ensure that they are free from defects. Before Electrolux began selling the Fridges, Electrolux knew, or was reckless in not knowing, that the Fridges contain defective Control Panels that cause the ice makers to malfunction.

67.   Despite having repeated notice of the defective Control Panels in its Fridges, Electrolux has engaged and continues to engage in the following routine, albeit, wrongful course of conduct, whereby it:

    a)   Designs, manufactures and sells Fridges with defective Control Panels;

    b)   Fails to disclose that the Fridges have defective Control Panels that cause the ice makers to malfunction while representing that the ice makers can make "twice the ice" and "up to 10 pounds of ice in 24 hrs.";

    c)   Continues to manufacture, market, advertise, distribute, and sell the Fridges to consumers when it knew or should have known the Fridges were not dependable and would not withstand normal operation;

d)    Fails to disclose to Plaintiff and Class members the substantial risk of ice maker failure;

e)    Fails to implement a recall or repair program to adequately announce to Plaintiff and Class members the presence of the defective Control Panel and risks associated therewith, including damage to property from water leaks; and

f)    Fails to disclose that EHP has not engineered a suitable repair for the defective Control Panel that will conform the Fridge to its Written Warranties, Fact Warranties, and implied warranties.

68.    As a result of Electrolux's deceptive conduct and concealment of material information about its Fridges alleged herein, Electrolux has caused Plaintiff and Class members to suffer injury as result of the defective Control Panels in the Fridges, including, but not limited to:

a)    Plaintiff and Class members overpaid for the Fridges because they could have purchased nearly identical Electrolux or Frigidaire brand refrigerators without ice dispensers for $400-700 less, or other brands of refrigerators;

b)    The value of Plaintiff's and Class members' Fridges is less than it would have been, if the Fridges did not have defective Control Panels; and

c)    Some Class members reasonably spent money for attempted repairs related to the defective Control Panel, which money they would not have spent, but for Electrolux's concealment of material information about the Fridges and the efficacy of the futile repairs it recommended Class members perform on their Fridges. A replacement Control Panel sells at retail for approximately $200, plus the cost of installation.

///

///

163814

1

### TOLLING OF STATUTES OF LIMITATIONS

2      69.    Any applicable statutes of limitation have been tolled by Defendant's

3 continuing, knowing and active concealment of the facts alleged herein.  Defendant

4 has kept Plaintiff and Class members ignorant of vital information essential to the

5 pursuit of their claims without any fault or lack of diligence on their part.

6 Defendant has offered futile repair attempts while maintaining that each repair

7 attempt was a solution for the malfunctioning ice maker.  Plaintiff and Class

8 members could not have reasonably discovered the facts giving rise to the claims

9 asserted herein until recently.

10      70.    In the alternative, Defendant should be estopped from relying on any

11 statutes of limitation.  Defendant has been under a continuing duty to disclose the

12 true character, quality, and nature of its Fridges to Plaintiff and Class members, and

13 to repair the defective Control Panel, but has failed to do so.  Because Defendant is

14 and was in exclusive possession of the facts and information concerning the true

15 character, quality and nature of the Fridges, Defendant is estopped from relying on

16 any statutes of limitations.

17

### TOLLING OF WARRANTY PERIOD

18
19      71.    The warranty period of Plaintiff's and Class members' express and
implied warranty claims is tolled pursuant to Cal. Civ. Code § 1795.6.

20

21

### CLASS ACTION ALLEGATIONS

22      72.    Plaintiff brings this action on behalf of herself and all others similarly

23 situated as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil

24 Procedure.

25      73.    The Class which Plaintiff seeks to represent is defined as follows:

26

27

28

163814

1
2
3
4

**All persons who purchased, for primarily personal, family, or household use, an Electrolux Bottom-Mount Refrigerator/Freezer with a through-the-door ice dispenser ("Fridge") in the State of California and to whom Electrolux has not paid a full refund of their purchase price, excluding taxes and installation costs.**

5
6
7
8
9
10
11
12

74.    Excluded from the Class are (i) Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendant's employees, officers, directors, agents, and representatives and their family members; (iv) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family; and (v) any purchaser of a Fridge in the State of California who has received a refund for the <u>full</u> purchase price of his/her Fridge, excluding taxes and installation costs.

13
14
15

75.    Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveals the Class should be expanded or otherwise modified.

16
17
18
19

76.    This action has been brought and may properly be maintained as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(3), because there is a well-defined community of interest in the litigation in which common issues predominate and the proposed class is easily ascertainable:

20
21
22

        a)    <u>Numerosity</u>.  The Fridges were sold and distributed by Electrolux throughout the United States.  Plaintiff is informed and believes that the proposed putative Class is made-up of at least hundreds of residents of California.

23
24
25
26
27
28

        b)    <u>Common Issues Predominate</u>.  Common questions of law and fact exist as to all members of the Class and predominate over any questions which affect only individual members of the Class.  The Fridges are all the same and do not differ in any manner that is relevant to Plaintiff's allegations, and the damage and harm caused thereby.  Plaintiff alleges herein that the Fridges all have the same

163814

inherent defects (and that they were defective when made, when they left Electrolux's possession and control, and are presently defective as they are now being used by Plaintiff and Class members). There is a well-defined community of interest in the questions of law and fact involved and that affect consumers who purchased the Fridges, and they all suffer from inherent and common defects. These questions of law and fact predominate over questions that affect only individual class members.

The common questions of law and fact include, without limitation:

(1)     Whether the Control Panels are defective;

(2)     Whether Electrolux knew and/or recklessly disregarded the fact that the Control Panels were and are defective;

(3)     Whether Electrolux concealed, and failed to disclose material facts in its communications and disclosures to Plaintiff and Class members regarding the defective Control Panels, which are inherent in the Fridges;

(4)     Whether Electrolux has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in connection with the sale and warranting of the Fridges;

(5)     Whether Electrolux breached express Written Warranties and/or Fact Warranties;

(6)     Whether Electrolux breached its implied warranties;

(7)     Whether, as a result of Electrolux's conduct, Plaintiff and Class members have suffered damages, and if so, the appropriate amount thereof; and

(8)     Whether, as a result of Defendant's misconduct, Plaintiff and Class members are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

These questions of law and fact predominate over questions that affect only individual Class members and there is a well-defined community of interest in the

1   questions of law and fact involved and that affect the Class.

2          c)  Typicality.  Plaintiff's claims are typical of the claims of the Class

3   members in that Plaintiff and the Class members have the same Fridges, which

4   share the same design, parts, materials, workmanship and manufacture and about

5   which Defendant repeatedly made the same, or nearly identical, uniform

6   representations and omissions.  Therefore, the claims of Plaintiff are and will be

7   typical of Class members.

8          d)  The Class is Ascertainable.  Plaintiff has adequately and succinctly

9   defined the Class, as detailed above, so the Court will be able to use the definition

10  to determine Class membership.

11         e)  Adequacy.  Plaintiff will fairly and adequately represent the

12  interests of all Class members.  Plaintiff has purchased a Fridge and is an adequate

13  representative of the Class as she has no interests which are adverse to the interests

14  of absent Class members.  Plaintiff has retained counsel with substantial experience

15  and success in the prosecution of complex defective product and consumer

16  protection class action litigation.

17         f)  Superiority.  A class action is superior to other available means for

18  the fair and efficient adjudication of this controversy.  Class action treatment will

19  permit a large number of similarly situated persons to prosecute their common

20  claims in a single forum simultaneously, efficiently and without the unnecessary

21  duplication of effort and expense that numerous individual actions would engender.

22  The disposition of their claims in this case and as part of a single class action

23  lawsuit, rather than hundreds of individual lawsuits, will benefit the parties and

24  greatly  reduce the aggregate judicial resources that would be spent if this matter

25  were handled as hundreds of separate lawsuits. Furthermore, given the extraordinary

26  expenses and burden in conducting the discovery and presentation of evidence

27  about the inherent defects in the Fridges, the burden of individual litigation would

28

163814

make it extremely difficult, if not impossible for individual members of the Class to redress the wrongs asserted herein, while an important public interest will be served by addressing the matter as a class action. Moreover, separate prosecution by thousands of individual members of the Class would likely establish inconsistent standards of conduct for the Defendant and result in the impairment of, and potential harm to, Class members' rights and the disposition of their interests through actions to which they were not parties. Plaintiff is informed and believes that a great amount of time and expense will be saved by conducting the discovery and presentation of evidence about the inherent defects in the Fridges in a single class action lawsuit, in contrast to the repeated discovery and presentation of evidence in hundreds or thousands of separate lawsuits brought on the common questions presented by the allegations of this complaint. Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION

### (Violations of Cal. Bus. & Prof. Code § 17200 *et seq.*))

77.    Plaintiff repeats and re-alleges all prior paragraphs and incorporates them as if fully set forth herein.

78.    Defendant has engaged in unfair, unlawful, and fraudulent business acts or practices as set forth above.

79.    Plaintiff brings this cause of action on behalf of herself and the California Class, pursuant to California Business and Professions Code, §17200, *et seq.*

80.    Defendant's conduct constitutes **unfair** business acts and/or practices because Defendant's practices have caused and are likely to cause substantial injury to Plaintiffs which injury is not reasonably avoidable by Plaintiffs in light of Defendant's exclusive knowledge of the defective Control Panels in the Fridges,

163814

1   and is not outweighed by the acts' and practices' benefits, if any, to Plaintiff and
2   Class members.  Such conduct is ongoing and continues to this date.

3       81.    The injury to consumers is substantial, particularly because the Fridges
4   are defective at the time of sale and continue to be defective after numerous repair
5   attempts during the warranty period.  Plaintiff and Class members paid hundreds of
6   dollars for Fridges that they would not otherwise have spent for Fridges that have
7   defective ice makers.  The Fridges are worth substantially less than Plaintiff and
8   Class members paid for them given the defective Control Panels.

9       82.    The injury to consumers is not outweighed by any countervailing
10  benefits to consumers or competition.  Any purported benefits to consumers from
11  the design of the Fridges is negated by the defective Control Panel and ice makers'
12  inability to make ice.  Any space that may have been saved inside the refrigerator
13  compartment through Electrolux's ice maker design is negated by the space
14  occupied by an idle ice maker.

15      83.    The injury to consumers is not an injury that consumers themselves
16  could not reasonably have avoided because consumers did not know about the
17  defective Control Panels before they bought the Fridges.

18      84.    Defendant's acts and practices of selling Fridges while omitting the
19  material fact that the Fridges have defective Control Panels that cause ice makers to
20  malfunction offends an established public policy and are immoral, unethical,
21  oppressive, unscrupulous or substantially injurious to consumers.

22      85.    It is unethical and oppressive to charge a premium price for a product
23  that fails of its essential purpose of making ice. Further, as alleged in detail above,
24  Defendant actually knew about the existence of defective Control Panels, which
25  renders Defendant's conduct particularly immoral, unethical, oppressive and
26  unscrupulous.

27
28

163814

86.     Defendant's   conduct   also   offends   established   public   policies
concerning consumer protection and class action litigation.  The California Supreme
Court has found that "[p]rotection of unwary consumers from being duped by
unscrupulous sellers is an exigency of the utmost priority in contemporary society."
*Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 808 (1971).  Moreover, the public policy at the
very core of the class action mechanism is to overcome the problem that relatively
small recoveries do not provide the incentive for any individual to bring a solo
action prosecuting his or her rights.   A class action solves this problem by
aggregating   the   relatively   small   potential   recoveries   into   something   worth
someone's time and labor.   *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997)
(quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).
California also has established a public policy against allowing manufacturers to
escape liability for placing defective consumer products in the stream of commerce
by imposing liability on them, and subjecting them to penalties, under the implied
warranty of merchantability by operation of law under the Song-Beverly Act, Cal.
Civ. Code § 1790 *et seq.*

87.     Furthermore, Electrolux's acts, practices and omissions threaten an
incipient violation of antitrust laws and/or consumer protection statutes, or violate
the policy and spirit of one of those laws because the effect of the acts and practices
are comparable to or the same as a violation of the law or otherwise significantly
threaten or harm competition.   Indeed, Defendant's acts and practices harm
competition by luring consumers to buy the Fridges, instead of the refrigerators
manufactured and sold by Defendant's competitors.   The free market requires the
free flow of information to run effectively.   Defendant's failure to disclose the
material fact that the Control Panels are defective and cause the ice makers (for
which consumers pay a premium price) to malfunction, impedes the free market.

163814

88.     Defendant's acts and practices are **unlawful** because they violate the Song-Beverly Act, Civil Code §§ 1790 et seq., the Consumer Legal Remedies Act, Civil Code 1750 *et seq.*, Bus. & Prof. Code § 17500, and the Magnuson-Moss Warranty Act ("MMWA").

  i.   Defendant violates Cal. Bus. & Prof. Code § 17500 as alleged throughout this Complaint and in the Second Cause of Action, incorporated hereto by reference.

  ii.  Defendant violates the CLRA, Cal. Civ. §§ 1750 *et seq.*, as alleged throughout this Complaint and the Third cause of action, incorporated by reference hereto.

  iii. Defendant violates Cal. Civ. Code §§ 1790 *et seq.*, and the MMWA as alleged throughout this Complaint, and in the Fourth, Fifth and Sixth Causes of Action, incorporated hereto by reference.

89.     Defendant's acts and practices are **fraudulent** in that they have deceived and/or are "likely to deceive" Plaintiff and members of the consuming public. Defendant sold Plaintiff and Class members Fridges with defective Control Panels that have rendered the Fridges' ice makers unusable for the purposes for which they were purchased.

90.     Plaintiff and class members relied on Defendant's unfair, unlawful, and fraudulent business acts and practices to their detriment in that they would not have purchased the Fridges had EHP disclosed that the Control Panels were defective and the Fridges' would not make make ice or as much ice as Electrolux represented, and for which performance Electrolux demanded and received a premium price. As alleged herein, Ms. Nemeth relied on Defendant's omissions and would not have bought the Fridge had EHP disclosed that the defective Control Panel caused the ice maker not to be able to produce the amount of ice it represented it would make.

91.    Defendant's unfair, unlawful, and fraudulent business acts and practices directly and proximately caused Plaintiff's and Class members' injuries in that but for Defendant's failure to disclose that the Fridges had defective Control Panels, Plaintiff and Class members would not have spent the additional $400-$700 for the Fridges, would have bought other less-expensive styles or brands of refrigerators, or would not have purchased the Fridges at all.

92.    Plaintiff and Class members have suffered injury in fact and have lost money as a result of Defendant's unfair competition in that they have overpaid for the Fridges and/or by that fact that their Fridges are worth less than they paid for them because of the defective Control Panels. Plaintiff and Class members seek an order of this Court awarding restitution, injunctive relief and all other relief allowed under Section 17200, *et seq.,* plus interest, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION

### (Violations of Cal. Bus. & Prof. Code § 17500 *et seq.*))

93.    Plaintiff repeats and re-alleges all prior paragraphs and incorporates them as if fully set forth herein.

94.    Plaintiff brings this cause of action on behalf of herself and the Class pursuant to California Business and Professions Code, §17500, *et seq.*

95.    Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17506.

96.    Defendant falsely advertised the Fridges by making partial representations about the ice makers' performance, while omitting the material information that the Control Panel of the ice maker was defective.

97.    EHP's false advertising through omission of material fact has deceived and is "likely to deceive" Plaintiff and Class members.

98.    Plaintiff and Class members relied upon Defendant's false advertising to their detriment in that they would not have purchased the Fridges had EHP

disclosed that the Control Panels were defective, and therefore their ice makers, for which Electrolux was demanding a premium price, would malfunction.

99.     Defendant's false advertising directly and proximately caused Plaintiff's and Class members' injuries in that but for Defendant's failure to disclose that the Fridges had defective Control Panels, Plaintiff and Class members would not have spent the additional $400-700 for the Fridges, would have bought other less-expensive styles or brands of refrigerators, or would not have bought the Fridges at all.

100.    Plaintiffs have suffered injury in fact and have lost money as a result of Defendant's false advertising in that they have overpaid for the Fridges and/or by that fact that their Fridges are worth less than they paid for them because of the defective Control Panels.

101.    Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535, Plaintiff seeks an order 1) requiring Defendant to immediately cease the unlawful, unfair, and or fraudulent business acts and/or practices and false and misleading advertising complained of herein; 2) enjoining Defendant from continuing to falsely advertise the Fridges; and 3) requiring Defendant to repair or replace the Fridges or provide full restitution to Plaintiff and Class members of their full retail purchase price (excluding taxes and installation costs), plus interest and attorneys' fees.

### THIRD CAUSE OF ACTION

**(Violations of the California Consumers Legal Remedies Act,
Cal. Civ. Code § 1750 *et seq.* – Seeking Injunctive Relief Only)**

102.    Plaintiff repeats and re-alleges all prior paragraphs and incorporates them as if fully set forth herein.

103.    Plaintiff seeks to enjoin Defendant's violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 *et seq.*

163814

104.    At all times relevant hereto, Plaintiff and Class members were "consumer[s]" as that term is defined in Civ. Code § 1761(d).

105.    At all times relevant hereto, the Fridges constituted "goods" as that term is defined in Civ. Code § 1761(a).

106.    At all times relevant hereto, Defendant constituted a "person" as that term is defined in Civ. Code § 1761(c).

107.    At all times relevant hereto, Plaintiff's and Class members' purchases of Defendant's Fridges and replacement parts constituted a "transaction" as that term is defined in Civ. Code § 1761(e).

108.    At all times relevant hereto, Defendant provided "services" to Plaintiffs within the meaning of Civil Code § 1761(b).

109.    The CLRA provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: (5) Representing that goods . . . have . . . characteristics, uses, benefits . . . which they do not have; ... (7) Representing that goods ... are of a particular standard, quality or grade . . . if they are of another; ... and (9) Advertising goods ... with intent not to sell them as advertised.

110.    Defendant violated Civ. Code § 1770(a) subsection (5), (7), and (9) by representing that the ice makers make "twice the ice" and "up to 10 pounds of ice in 24 hours" while simultaneously failing to disclose the Fridges have defective Control Panels that cause their ice makers to cease making ice.  The information Defendant concealed and/or did not disclose to Plaintiff and Class members are material facts in that reasonable consumers expect Fridges with ice dispensers, for which they paid a premium price, to function properly, and thus would have considered the omitted facts important in deciding whether to purchase, or whether to pay the stated price for, the Fridges.

111. Plaintiff and Class members would have behaved differently by not buying the Fridges, not paying for repairs, and/or paying less for the Fridges, had they been aware that the Control Panels were defective.

112. The omissions of material facts, as alleged above, are contrary to representations actually made by Defendant, including but not limited to, that the Fridges would produce "twice the ice" and "up to 10 pounds of ice in 24 hours."

113. Defendant was obliged to disclose the material facts because: a) Defendant had exclusive knowledge of the material facts not known to Plaintiff and Class members, since only Defendant had access to the aggregate data from its retailers, its own tests, and complaints from its customers through its ServiceBench warranty and customer service database(s); and b) Defendant actively concealed and suppressed the material facts from Plaintiff and Class members by not warning of the defective Control Panel at the time of purchase and by performing warranty and/or repair work that it knew would not cure the malfunctioning ice makers, while representing to consumers either expressly or impliedly that the futile repair efforts would fix the malfunctioning ice makers.

114. Plaintiff and Class members justifiably acted or relied to their detriment upon the concealment and/or non-disclosure of material facts as evidenced by their purchases of the defective Fridges. Had defendant disclosed the material fact that the Fridges had defective Control Panels, Plaintiff and Class members would have differently by not buying the Fridges.

115. Defendant's omissions of material facts directly and proximately caused Plaintiff's and Class member's injuries in that Plaintiff and Class members would not have paid the extra premium of $400-700 for the in-door ice dispensers or would not have bought the Fridges at all had Defendant disclosed that the ice makers would cease to operate as a result of defective Control Panels. As such, Plaintiffs did not receive the benefit of the bargain.

116.   Civil Code § 1780 (a)(2) permits any court of competent jurisdiction to enjoin practices that violate Civil Code § 1770.

117.   Pursuant to Civil Code § 1782(d), Plaintiff seeks only injunctive relief under this cause of action, and will be sending Defendant a demand letter that complies with Civ. Code § 1782(a).   Should Defendant not satisfy all of the elements of Civ. Code § 1782(c)(1)-(4), Plaintiff with amend this complaint to include a claim for damages under the CLRA.

## FOURTH CAUSE OF ACTION

### Asserted On Behalf of the California Class
### (Breach of Express Warranty under the Song-Beverly Act, Cal. Civ. Code 1790 *et seq*., and Cal. Comm. Code § 2313)

118.   Plaintiff repeats and re-alleges all prior paragraphs and incorporates them as if fully set forth herein.

119.   Plaintiff seeks recovery for herself and the Class for Defendant's breach of express warranty under the laws of the State of California.

120.   Under its Written Warranty, Defendant warranted all of the Fridges against "malfunctions or defects in materials or workmanship," and also warranted "Every Electrolux Major Appliance" under its "Platinum Star® Service & Warranty"   as   "guaranteed to be free of material defects or component malfunctions" at a time when it knew that the Fridges had inoperable ice makers caused by defective Control Panels.

121.   Under its Fact Warranties, Electrolux warranted that the Fridges would produce "Up to 10 pounds of filtered, restaurant-quality ice in 24 hours…," "Get Twice the ice," "Twice the ice as any refrigerator ice maker," "It can completely fill an ice bin in about eight (8) hours" and "The ice maker produces approximately (9) pounds of ice every 24 hours depending on usage conditions" at a time when it was selling Fridges with defective Control Panels.

163814

122.  These affirmations and promises created express warranties that the Fridges would provide the performance describe above and were sold without defects and would conform to Defendant's affirmations and promises.

123.  Defendant is obligated under the terms of its express Warranties to repair and/or replace the defective Control Panels in the Fridges sold to Plaintiffs, and/or to make the Fridges conform to the Written Warranties and Fact Warranties under the Song-Beverly Act, Civil Code § 1793.2(b) and (d), Cal. Comm. Code § 2313.

124.  Defendant breached its Written Warranties and Fact Warranties, as set forth above, by selling and supplying the Fridges with defective Control Panels and by failing to repair or replace the Fridges with non-defective Fridges so that they conform to the warranties after a reasonable number of repair attempts.

125.  To the extent any notice is deemed required, Defendant has received sufficient and timely notice of the breaches of warranties alleged herein.  Defendant has had notice of Plaintiff's claim as it has authorized 5 attempts at repair by Howard's under warranty.  Despite this notice and Defendant's knowledge of the defective Control Panels in its Fridges, Defendant has refused to honor its Written Warranties and Fact Warranties.

126.  In addition, Defendant has received thousands of complaints and other notices from its customers throughout the United States which complaints notified Defendant that the Fridges are malfunctioning.

127.  Plaintiff has complied with her obligations under the Written Warranty and the law and has given Defendant a reasonable opportunity to cure the breaches of its Warranties and Defendant failed to do so.

128.  Pursuant to Cal. Civ. Code § 1793.2, EHP had 30 days within which to conform Plaintiff's and Class member's Fridges to the express warranties, however, EHP failed to do so and no conditions beyond its control prevented its compliance.

163814

129.  Defendant knew of its Warranty obligations to repair or replace the Fridges, because of the defective Control Panels in the Fridges that it could not conform to its express warranties.   However, Defendant has willfully refused to replace the Fridges.   Therefore, Defendant is liable for damages, as well as civil penalties pursuant to Civil Code § 1794.

130.  EHP's time limits on its express Warranties are procedurally and substantively unconscionable.   The Written Warranties are offered on a take-it-or leave-it basis without any input from consumers in a prolix printed form that are oppressive and surprise consumers because EHP is in a superior bargain position. The Written Warranties are substantially unconscionable because EHP knowingly and/or recklessly sold a defective product that was defective at the time of sale, without conspicuously informing consumers about the defects in the Fridges which cause them to produce no ice, or less ice than Defendant represented the Fridges would make. The time limits on the express Warranties are grossly inadequate to protect Plaintiff and Class members.    The term of the Written Warranties unreasonably favor Defendant by unreasonably limiting the Warranty to 1-5 years on a product that is expected to last 17 or more years; a gross disparity in bargaining power existed as between Defendant and Plaintiffs; Plaintiffs had no meaningful choice in determining those time limitations; and Defendant knew or should have known that the Fridges were defective at the time of sale and that the Control Panels would fail prematurely in the useful lives of the Fridges, thereby creating overly harsh and one-sided results by leaving consumers to pay for the repair of defects that Electrolux knew existed at the time of sale.

131.  Defendant's affirmations and promises became part of the "basis of the bargains" between Plaintiff and the Class members, on the one hand, and Electrolux, on the other hand. Plaintiff and Class members would not have purchased the Fridges had EHP not warranted the Fridges as it did.

163814

1    132.    As a direct and proximate result of Defendant's breach of the Written

2    Warranty and Fact Warranties, Plaintiff and Class members have sustained damages

3    and other losses in an amount to be determined at trial.

4    133.    Defendant has made more repair attempts than is reasonable and has

5    still has not made the Fridges conform to its express warranties.  Pursuant to Cal.

6    Civ. Code § 1793.2, EHP is required to replace the Fridges with conforming

7    Fridges, or reimburse Plaintiff and Class members their purchase price. Plaintiff is

8    also entitled to recover costs, attorneys' fees, and other relief as the Court deems

9    appropriate.

10

11                            **FIFTH CAUSE OF ACTION**

12              **Asserted On Behalf of the California Class**

13    **(Breach of Implied Warranty of Merchantability under the Song-Beverly Act,**
      **Cal. Civ. Code 1790 *et seq.*)**

14    134.    Plaintiff alleges and incorporates the above allegations by reference as

15    if fully set forth herein.

16    135.    Under California's Song-Beverly Consumer Warranty Act, Cal. Civ.

17    Code § 1792 *et seq.*, every sale of consumer goods is accompanied by both a

18    "manufacturer's and retailer's" implied warranty that the goods are merchantable

19    within the meaning of Cal. Civ. Code § 1791.1(a). Therefore, consumers need not

20    be in privity with the manufacturer to bring an implied warranty claim.

21    136.    Pursuant to Cal. Civ. Code § 1793, EHP's attempt to modify the length

22    of the implied warranty of merchantability in its Written warranty is void.

23    137.    The Fridges are "consumer goods" within the meaning of Cal. Civ.

24    Code § 1791(a).

25    138.    Defendant is a "manufacturer" within the meaning of Cal. Civ. Code §§

26    1791(j).

27    139.    Plaintiff bought the Fridge at retail in the State of California.

28

163814

140.   At the time of sale, and currently, Defendant is in the business of manufacturing, marketing, and selling Fridges.

141.   By operation of law, Defendant impliedly warranted to Plaintiff and Class members that the Fridges, and ice makers, which are an integral part thereof, and for which Plaintiff and Class members paid a premium price, were of merchantable quality and fit for the ordinary purposes for which they are used - making and keeping ice.

142.   Defendant knowingly and/or recklessly sold a defective product without conspicuously informing consumers about the defective Control Panels and malfunctioning and defective ice makers.

143.   Defendant breached the implied warranty at the time of sale by selling the Fridges with defective Control Panels.

144.   Plaintiff's and Class members' Fridges do not pass without objection in the trade as they are sold as a premium product, but fail to make and preserve ice.

145.   Plaintiff's and Class members' Fridges became unfit for their ordinary purpose of making and preserving ice.

146.   Plaintiff's and Class members' Fridges were not adequately contained, packaged, or labeled as the labels "twice the ice" and "Up to 10 pounds of ice within 24 hours" "9 pounds of ice in 24 hours" are inaccurate and misleading.

147.   Plaintiff's and Class member's Fridges do not conform to the promises or affirmations of fact made on the labels including "twice the ice" and "10 pounds of ice in 24 hours," or in the promises made in the Operating Instructions that the Fridges will make "9 pounds of ice in 24 hours" or "It can completely fill an ice bin in about eight (8) hours."

148.   Plaintiff and Class members were the intended third-party beneficiaries of the contracts for sale of the Fridges from Electrolux to the retailers who ultimately sold the Fridges to Plaintiff and Class members.  In the case of Plaintiff

163814

1   Nemeth, Plaintiff is the intended third party beneficiary of a contract for sale of the
2   Fridge from EHP to Howard's Appliance.   As for Class members, they are the
3   intended third-party beneficiaries of the contracts for sale of the Fridges from EHP
4   to retailers such as Lowes, Home Depot, Sears, Pacific Sales/Best Buy, and/or
5   smaller independent retailers across the State of California.

6       149.   Defendant, who is the manufacturer of the Fridges knew that the
7   retailers to whom it sold the Fridges were not going to own the Fridges any longer
8   than it took to sell them to Plaintiff and Class members.   Further, Defendant
9   intended that any warranty, whether express or implied, that applied to the Fridges
10  were for the benefit of Plaintiff and Class members; who are the people that own
11  and use the Fridges.

12      150.   Defendant knew and intended that Plaintiff and Class members were
13  the ultimate beneficiaries of Defendant's implied warranties as they are the owners
14  of the Fridges.

15      151.   Plaintiff and Class members purchased the Fridges from authorized
16  dealers who are agents of Electrolux.

17      152.   The dealers were not intended to be the ultimate consumers of the
18  defective Fridges; the warranty agreements were designed for and intended to
19  benefit the ultimate consumers only.

20      153.   Defendant, who manufactures and markets the Fridges, and/or
21  sellers/resellers of the Fridges, had knowledge that Plaintiff and Class members
22  were the end users of the Fridges when Defendant entered into any and all sales
23  contracts and subcontracts for the Fridges with retailers and resellers and
24  Defendant's intent to benefit Plaintiff and Class members arises by operation of law
25  pursuant to the "implied covenant of good faith and fair dealing" contained within
26  any and all sales contracts and subcontracts for the Fridges entered into by
27  Defendant.

28

163814

154. Electrolux brought itself into privity with Plaintiff and Class members who relied on written labels and advertisements made by Electrolux as alleged herein.

155. As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff and Class members have sustained damages and other losses in an amount to be determined at trial. Plaintiff and Class members are entitled to recover damages and attorneys' fees as provided by statute, as well as costs, and other relief the Court deems appropriate.

## SIXTH CAUSE OF ACTION

### Asserted On Behalf of All State Class
### (Violations of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301 *et seq.*) – Breach of Express Written Warranty and Breach Implied Warranty of Merchantability)

156. Plaintiff repeats and re-allege all prior paragraphs and incorporates them as if fully set forth herein.

157. The Fridges are "consumer products" as that term is defined under 15 U.S.C. §2301(1).

158. Plaintiff and Class members are "consumers" as that term is defined by 15 U.S.C. § 2301(3), and utilized the Fridges for personal and household use and not for resale or commercial purposes.

159. EHP is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

160. EHP provided Plaintiff and Class members with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

161. EHP provided Plaintiff and Class members with "implied warranties" as that term is defined by 15 U.S.C. § 2301(7)

162. In its capacity as a warrantor, and by the conduct described herein, any attempt by EHP to limit the express warranties in a manner that would exclude

coverage for the defective Control Panels in the Fridges is unconscionable and any such effort to disclaim, or otherwise limit, liability for its defective Fridges is null and void as alleged above.

163.   This Court has jurisdiction over this cause of action under 28 U.S.C. 1332.

164.   EHP has failed to comply with its obligations under its Written Warranties, Fact Warranties and implied warranties. By failing to repair or replace the Fridges under the Written Warranties and conform the Fridges to the Fact Warranties and implied warranties, EHP breached its warranties.

165.   Plaintiff fulfilled her obligations under the warranties.

166.   As a direct and proximate result of Defendant's breach of express and implied warranties, Plaintiff and Class members have suffered injury in that they Fridges are worth less than they paid for them and are entitled to damages, equitable relief, attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant for the following:

1.   An order certifying Plaintiff's claims as a class action, appointing Patty Nemeth as representative Plaintiff and appointing her counsel, Stuart M. Eppsteiner, Andrew J. Kubik, and Zelekha Amirzada of Eppsteiner & Fiorica Attorneys, LLP to be class counsel for the Class;

2.   A constructive trust on and restitution of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

3.   All recoverable compensatory, punitive, and other damages sustained by Plaintiff and Class members;

163814

1      4.      Actual and/or statutory damages for injuries suffered by Plaintiff and
2      Class members in the maximum amount permitted by applicable law;
3      5.      An order (1) enjoining Defendant's wrongful, unlawful, fraudulent,
4      deceptive, and unfair conduct as set forth above; (2) directing Defendant to engage
5      in a corrective notice campaign; and (3) directing Defendant to repair the Fridges
6      or refund to Plaintiff and Class members the funds paid to Defendant for the
7      defective Fridges;
8      6.      Statutory pre-judgment and post-judgment interest on any amounts;
9      7.      Payment of reasonable attorneys' fees and costs as may be allowable
10     under applicable law; and
11     8.      Such other relief as the Court may deem just and proper.
12
13     Plaintiff individually and on behalf of all others similarly situated, hereby
14     demands a trial by jury on all issues so triable.
15
16     DATED: June 8, 2011                  EPPSTEINER & FIORICA ATTORNEYS, LLP
17
18                             By:  _____
19                                  Stuart M. Eppsteiner, Esq.
20                                  Andrew J. Kubik, Esq.
                                    Zelekha Armizada, Esq.
21
22
23
24
25
26
27
28

163814

# EXHIBIT 1

**HOWARDS**
SERVICE CENTER
1-800-2-HOWARD   1-800-246-9273
ALL SERVICES C.O.D.

PK UP A.M. P.M.
DEL. A.M. P.M.   LOANER   WILL CALL

STATE REG. C60991

☐ WARRANTY  ☐ PART WARRANTY  ☐ SPECIAL AUTHORIZATION#  RF1001  ☐ OTHER

SERVICE INVOICE NO.

BRAND ELE = ELECTROLUX   PRODUCE TYPE
MODEL NO. EI23BC56IS7   SERIAL NO. 4A00403876

HSC  146627

NAME NEMETH

CUST. NUMBER
900553

ADDRESS LAGUNA NIGUEL, CA

3calls

DATE PURCHASED 07/05/10
DATE CALL RECEIVED 08/26/10
REPAIR REQUEST DATE 08/30/10

CUSTOMER'S REQUEST: I/M NOT WRKIN, TRACKIN RACK INC
AO

DEFECT CODE

SERVICE PERFORMED:
RE PLACED ICE MAKER KIT CH-OK

| QUANTITY | FAULT/JOB CODE | PART NUMBER | DESCRIPTION | INVOICE NUMBER | PART COST | EXTENSION |
|---|---|---|---|---|---|---|
| 1 | | 5303918495 | Kit I/M | -ESTOCK | | IN ST |

ENTERED OCT 0 5 2010
EB 10/7/10

61-32201 CLASS A
HOWARD'S APPLIANCE
& FLAT SCREEN
5102 INDUSTRY AVE.
PICO RIVERA, CA 90660

TOTAL LABOR 84.00

**HOWARD'S**

SERVICE CENTER
1-800-2-HOWARD  1-800-246-9273
ALL SERVICES C.O.D.

MAP ___   PK UP P.M. ___
A.M.
DEL. P.M. ___ LOANER ___   WILL CALL ☐

STATE
REG  **C60991**

☐ WARRANTY   ☐ PART WARRANTY   ☐ SPECIAL AUTHORIZATION#   ☐ OTHER

SERVICE INVOICE NO.

BRAND  **ELE - ELECTROLUX**     PRODUCT TYPE  **REFER**

MODEL NO.  **EI238C56IS**     SERIAL NO.  **4A00403876**

HSC  **147729**

CUST. NUMBER

**900553**

NAME  **NEMETH**

ADDRESS  **LAGUNA NIGUEL, CA**

HOME PHONE NUMBER

2ⁿᵈ PHONE

*2 calls*

DATE PURCHASED  **07/05/10**
DATE CALL RECEIVED  **09/13/10**
REPAIR REQUEST DATE  **10/12/10**

CUSTOMER'S REQUEST:
**RECK OF 9/09/10 INV*146627 PAR -**
SPEC  **INSTALLED**ALL THE ICE CAME O**
REQUEST:  **OF DISPENSER ALL OVER FLOOR ***

CROSS
STREET:  **SWEET MEADOW/GOLD**

DEFECT CODE

NOT HOME ☐  LACK PART ☐  CALL BACK ☐
TIME STARTED     OR   TIME STARTED

SERVICE PERFORMED:  ☐ ILLUSTRATE DETAIL OF PROBLEM ON REVERSE SIDE

*iNstalled board Kit*

MFG. CODE I REF.

TIME COMPLETED     TIME COMPLETED

CALL TAKER

TRIP CHANGE APPR.

TOTAL TIME  *haphul*   TOTAL TIME  *houalos*

Howard's Warrant

MICRO LEAK READING:   BEFORE   AFTER

SELLING DEALER I DISTRIBUTOR     CITY     STATE

*Paid on 146627 - rv*

| QUANTITY | FAULT I JOB CODE | PART NUMBER | DESCRIPTION | INVOICE NUMBER | PART COST | EXTENSION |
|---|---|---|---|---|---|---|
| 1 | fry | 5303918447 | Kit | N/A stock | X | 101.36 |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

MAG. I MOTOR I SEALED UNIT NO. OLD     SERVICE AGREEMENT NUMBER

MAG. I MOTOR I SEALED UNIT NO. NEW     SERVICE AGREEMENT EXP. DATE

*ENTERED DEC 0 1 2010*

SHOP LOCATION

I Authorize A Charge To My Credit Card.
CARD NAME

CARD NUMBER  **APPROVED OCT 16**

EXP. DATE   AUTH. NO.

| | |
|---|---|
| SUB TOTAL | |
| HANDLING | |
| | |

The Repairs Have Been Performed In A Manner Satisfactory To Me.
CUSTOMER'S SIGNATURE     DATE

I Have Been Advised Of The Anti Tip Device For My Range.
SIGNATURE     DATE

| | |
|---|---|
| TRIP CHARGE | |
| COMPLETED CALL LABOR | |
| DIAGNOSTIC FEE | 78 |
| TOTAL LABOR | |

I Hereby Certify The Above Service Has Been Performed & Parts Used.
TECHNICIAN'S I OTHER SIGNATURE I NUMBER     DATE

*Jaime #121   10/12/10*

Estimate
Approved By: _____
Hold Estimate
☐ Yes ____ No ____
ACKNOWLEDGMENT: I HAVE READ AND UNDERSTAND THE ABOVE ESTIMATE AND TERMS AND AUTHORIZE THE REMOVAL OF THE ABOVE DESCRIBED EQUIPMENT FOR PURPOSES STATED. I ALSO UNDERSTAND WHEN AUTHORIZED REPAIRS ALONG WITH NECESSARY MATERIALS ARE COMPLETED AN EXPRESS REPAIRMAN'S LIEN IS HEREBY ACKNOWLEDGED ON ABOVE SET TO SECURE THE AMOUNT OF REPAIR THERETO.
CUSTOMER'S SIGNATURE: _____

THE INSURED PROPERTY IS INSURED OR PROTECTED TO THE AMOUNT OF THE ACTUAL CASH VALUE AGAINST LOSS OCCASIONED BY THEFT, FIRE, OR VANDALISM.
REPAIRS SATISFACTORILY COMPLETED & OLD PARTS RETURNED
CUSTOMER'S SIGNATURE: _____

| ESTIMATE OF REPAIR | |
|---|---|
| PARTS | |
| LABOR | |
| SALES TAX | |
| ESTIMATE TOTAL | |
| REVISED EST. OF REPAIR | |
| PARTS | |
| LABOR | |
| SALES TAX | |
| REV EST TOTAL | |

| | |
|---|---|
| TRAVEL | |
| STATE TAX | |
| LOCAL TAX | |
| P/U - DEL | |
| 2ND PERSON | |
| TOTAL | |
| METHOD OF PAYMENT | |
| CHARGE ☐   CASH | |
| CHECK # | |

61-32201 CLASS A
HOWARD'S APPLIANCE
& FLAT SCREEN
5102 INDUSTRY AVE.
PICO RIVERA, CA 90660

SERVICER NAME AND ADDRESS:

ACCOUNT NUMBER   TRANSMITTAL NUMBER   INTERNAL CONTROL NO.   AUDITED BY   OTHER

* PLEASE SEE REVERSE SIDE FOR ADDITIONAL INFORMATION

(08/C

# HOWARDS

SERVICE CENTER
1-800-2-HOWARD  1-800-246-9273
ALL SERVICES C.O.D.

MAP ___  PK UP P.M. ___  REG C60991
A.M.
DEL. P.M. ___ LOANER ___  WILL CALL ☐

☐ WARRANTY   ☐ PART WARRANTY   ☐ SPECIAL AUTHORIZATION#   ☐ OTHER

SERVICE INVOICE NO.

BRAND: ELE - ELECTROLUX
PRODUCT TYPE: REFER
MODEL NO.: EI23BC56IS
SERIAL NO.: 4A00403876

HSC 151621
CUST. NUMBER

NAME: NEMETH
ADDRESS: LAGUNA NIGUEL, CA
HOME PHONE NUMBER:

DATE PURCHASED 07/05/10
DATE RECEIVED 11/03/10
REPAIR REQUEST DATE 11/08/10

CUSTOMER'S REQUEST: IMK NOT PROD ICE JM

CROSS STREET: SWEET MEADOW/GOLDEN LANTERN

SERVICE PERFORMED:
Called Tech line went through a complete
Diagnostic Test everything dd pass.
Tech line wants to allow unit to possibly get out
of recovery mode 24 hrs. otherwise call back

ENTERED DEC 01 2010
FB 12/13

Manufacture's War

SERVICER NAME AND ADDRESS:
61-32201 CLASS A
HOWARD'S APPLIANCE
& FLAT SCREEN
5102 INDUSTRY AVE.
PICO RIVERA, CA 90660

TECH DATE 11/8/10  #191

ESTIMATE OF REPAIR
REVISED EST. OF REPAIR

TRIP CHARGE
COMPLETED CALL LABOR
DIAGNOSTIC FEE
TOTAL LABOR 80
TRAVEL 35

* PLEASE SEE REVERSE SIDE FOR ADDITIONAL INFORMATION

**HOWARDS**

SERVICE CENTER
1-800-2-HOWARD  1-800-245-9273
ALL SERVICES C.O.D.

DEL. ___ 12/8 PK UP ___  A.M. P.M.

LOANER ___   WILL CALL ☐

STATE REG  C60991

☐ WARRANTY   ☐ PART WARRANTY   ☐ SPECIAL AUTHORIZATION#

☐ OTHER

**SERVICE INVOICE NO.**

| BRAND | PRODUCT TYPE |
|---|---|
| ELE — ELECTROLUX | REFER |

HSC  152552
CUST. NUMBER

| MODEL NO. | SERIAL NO. |
|---|---|
| EI23BC56IS | 4A00403B76 |

900553

NAME  NEMETH

ADDRESS  LAGUNA NIGUEL, CA

R/S 12/16
thru

DATE PURCHASED  07/05/10
DATE CALL RECEIVED  11/16/10
REPAIR REQUEST DATE  10/23/10

HOME PHONE NUMBER

2ⁿᵈ PHONE

DEFECT CODE

☐ NOT HOME   ☐ LACK PART   ☐ CALL BACK

CUSTOMER'S REQUEST:
IMKR NOT WORKING PROPERLY
-R8

CROSS STREET:  SWEET MEADOW/GOLDEN LANTERN

TIME STARTED

SPEC REQUEST:

☐ SERVICE PERFORMED:   ☐ ILLUSTRATE DETAIL OF PROBLEM ON REVERSE SIDE

MFG. CODE I REF.

TIME COMPLETED   TIME COMPLETED

Replaced parts listed per
tech-line
electrolux sending parts to customer

CALL TAKER
TRIP CHANGE APPR.

TOTAL TIME   TOTAL TIME

Manufacture's Warr

| SELLING DEALER I DISTRIBUTOR | CITY | STATE |
|---|---|---|

MICRO LEAK READING:
BEFORE   AFTER

| QUANTITY | FAULT I JOB CODE | PART NUMBER | DESCRIPTION | INVOICE NUMBER | PART COST | EXTENSION |
|---|---|---|---|---|---|---|
| 1 | | 241676701 | Solenoid | | | |
| 1 | | 5304478376 | Main Board | | | |
| 1 | | 240568606 | weather stripping | | | |
| 1 | | 5903918484 | funnel ext. | | | |

ENTERED JAN 0 6 2011
6131/8/11

| MAG. I MOTOR I SEALED UNIT NO. OLD | SERVICE AGREEMENT NUMBER |
|---|---|

I Authorize A Charge To My Credit Card.
CARD NAME

SUB TOTAL
HANDLING
TOTAL PARTS

| MAG. I MOTOR I SEALED UNIT NO. NEW | SERVICE AGREEMENT EXP. DATE |
|---|---|

CARD NUMBER

SHOP LOCATION

EXP. DATE   AUTH. NO.

TRIP CHARGE
COMPLETED CALL
LABOR

The Repairs Have Been Performed In A Manner Satisfactory To Me.
I Have Been Advised of The Anti Tip Device For My Range.

DIAGNOSTIC FEE

CUSTOMER'S SIGNATURE  X Patti Nemeth   DATE 12/16/10
SIGNATURE   DATE

TOTAL LABOR  80 00

I Hereby Certify The Above Service Has Been Performed & Parts Used.
TECHNICIAN'S I OTHER SIGNATURE I NUMBER   DATE
#121  12/16/10

TRAVEL  13 50

SERVICER NAME AND ADDRESS:

Estimate
Approved By:
Hold Estimate ___  No. ___

**ESTIMATE OF REPAIR**

| | |
|---|---|
| PARTS | |
| LABOR | |
| SALES TAX | |
| ESTIMATE TOTAL | |

STATE TAX
LOCAL TAX
P/U - DEL.

61-32201 CLASS A
HOWARD'S APPLIANCE
& FLAT SCREEN
5102 INDUSTRY AVE.
PICO RIVERA, CA 90660

**REVISED EST. OF REPAIR**

| | |
|---|---|
| PARTS | |
| LABOR | |
| SALES TAX | |
| REV. EST. TOTAL | |

2ND PERSON
TOTAL
METHOD OF PAYMENT
CHARGE ☐
CHECK ☐
CASH

CUSTOMER'S SIGNATURE

| ACCOUNT NUMBER | TRANSMITTAL NUMBER | INTERNAL CONTROL NO. | AUDITED BY | OTHER |
|---|---|---|---|---|

# HOWARDS

**SERVICE CENTER**
1-800-2-HOWARD  1-800-246-9273
ALL SERVICES C.O.D.

| | | |
|---|---|---|
| MAP | PK J. | A.M. / P.M. |
| DEL. | A.M. | WILL CALL ☐ |
| LOANER | | |

STATE REG **C60991**

☐ WARRANTY  ☐ PART WARRANTY  ☐ SPECIAL AUTHORIZATION#  ☐ OTHER

**SERVICE INVOICE NO.**
156398
HSC

BRAND _ELECTROLUX_     PRODUCT TYPE
MODEL NO. EI23BC56IS1     SERIAL NO. 4A04407875

**CUST. NUMBER**
900553

NAME NEMETH

ADDRESS LAGUNA NIGUEL, CA

C/K Early to Call
techline Must

DATE RQ'D 2/23/10
DATE C ?
REPAIR 2/?/11

HOME PHONE NUMBER          2ⁿᵈ PHONE

CUSTOMER REQUEST OF 12/16 IMKER NOT
WRKING EB*CALL TECH LINE*    SWEET MEADOW/GOLDEN

DEFECT CODE

SPEC REQUEST:     CROSS STREET:

SERVICE PERFORMED:  ☐ ILLUSTRATE DETAIL OF PROBLEM ON REVERSE SIDE

Per Richard at techline
order Main Control Board, interface board
and Ice maker Control board
Electrolux Sending parts to Customer
Replaced Parts Listed

MFG. CODE I REF.
CALL TAKER
TRIP CHANGE APPR'L

TIME STARTED / TIME STARTED
TIME COMPLETED / TIME COMPLETED
TOTAL TIME / TOTAL TIME
Manufacture's Warr

MICRO LEAK READING:
BEFORE / AFTER

SELLING DEALER I DISTRIBUTOR      CITY      STATE

| QUANTITY | FAULT I JOB CODE | PART NUMBER | DESCRIPTION | INVOICE NUMBER | PART COST | EXTENSION |
|---|---|---|---|---|---|---|
| 1 | | 5303918495 | ice maker Board | | | |
| 1 | | 241836006 | Interface Board | | | |
| 1 | | 5304478376 | Main Control Board | | | |
| | | 5303918508 | | | | |
| | | ENTERED MAR 1 0 2011 | | | | |
| | | EB 3/17/11 | | | | |

MAG. I MOTOR I SEALED UNIT NO. OLD
E-mail

SERVICE AGREEMENT NUMBER

CARD NAME

| | |
|---|---|
| SUB TOTAL | |
| HANDLING | |
| TOTAL PARTS | |

MAG. I MOTOR I SEALED UNIT NO. NEW   SERVICE AGREEMENT EXP. DATE   CARD NUMBER

SHOP LOCATION          EXP. DATE   AUTH. NO.

| | |
|---|---|
| TRIP CHARGE | |
| COMPLETED CALL LABOR | |
| DIAGNOSTIC FEE | |
| TOTAL LABOR | |
| TRAVEL | |
| STATE TAX | |
| LOCAL TAX | |
| P/U - DEL. | |
| 2ND PERSON | |
| TOTAL | |

The Repairs Have Been Performed In A Manner Satisfactory To Me.
CUSTOMER'S SIGNATURE
X Patty Nemeth   1/28/11

I Have Been Advised Of The Anti Tip Device For My Range.
SIGNATURE          DATE

I Hereby Certify The Above Service Has Been Performed & Parts Used.
TECHNICIAN'S I OTHER SIGNATURE I NUMBER   DATE
Jun #121   1/28/11

Estimate Approved By:
☐ Hold Estimate
Yes ___ No___

**ESTIMATE OF REPAIR**
| PARTS | |
| LABOR | |
| SALES TAX | |
| ESTIMATE TOTAL | |

**REVISED EST. OF REPAIR**
| PARTS | |
| LABOR | |
| SALES TAX | |
| REV. EST. TOTAL | |

ACKNOWLEDGMENT: I HAVE READ AND UNDERSTAND THE ABOVE ESTIMATE AND TERMS AND AUTHORIZE THE REMOVAL OF THE ABOVE DESCRIBED EQUIPMENT FOR PURPOSES STATED. I ALSO UNDERSTAND WHEN AUTHORIZED REPAIRS ALONG WITH NECESSARY MATERIALS ARE COMPLETED, AN EXPRESS REPAIRMAN'S LIEN IS HEREBY ACKNOWLEDGED ON ABOVE SET TO SECURE THE AMOUNT OF REPAIR THERETO.
CUSTOMER'S SIGNATURE

THE INSURED PROPERTY IS INSURED OR PROTECTED TO THE AMOUNT OF THE ACTUAL CASH VALUE AGAINST LOSS OCCASIONED BY THEFT, FIRE OR VANDALISM.

REPAIRS SATISFACTORILY COMPLETED & OLD PARTS RETURNED
CUSTOMERS SIGNATURE

SERVICER NAME AND ADDRESS:

61-32201 CLASS A
HOWARD'S APPLIANCE
& FLAT SCREEN
5102 INDUSTRY AVE.
PICO RIVERA, CA 90660

| METHOD OF PAYMENT | |
|---|---|
| CHARGE ☐ | CASH |
| CHECK #___ | |
| OTHER | |

ACCOUNT NUMBER   TRANSMITTAL NUMBER   INTERNAL CONTROL NO   AUDITED BY
R.O. 135

PLEASE SEE REVERSE SIDE FOR ADDITIONAL INFORMATION

(08/0?)

# EXHIBIT 2

# Warranty      37

## Major Appliance Warranty Information

Your appliance is covered by a one year limited warranty. For one year from your original date of purchase, Electrolux will repair or replace any parts of this appliance that prove to be defective in materials or workmanship when such appliance is installed, used, and maintained in accordance with the provided instructions.  In addition, the cabinet liner and sealed refrigeration system (compressor, condenser, evaporator, dryer or tubing) of your appliance is covered by a two through five year limited warranty.  During the 2nd through 5th years from your original date of purchase, Electrolux will repair or replace any parts in the cabinet liner and sealed refrigeration system which prove to be defective in materials or workmanship when such appliance is installed, used, and maintained in accordance with the provided instructions.

**Exclusions**

This warranty does not cover the following:

1.   Products with original serial numbers that have been removed, altered or cannot be readily determined.
2.   Product that has been transferred from its original owner to another party or removed outside the USA or Canada.
3.   Rust on the interior or exterior of the unit.
4.   Products purchased "as-is" are not covered by this warranty.
5.   Food loss due to any refrigerator or freezer failures.
6.   Products used in a commercial setting.
7.   Service calls which do not involve malfunction or defects in materials or workmanship, or for appliances not in ordinary household use or used other than in accordance with the provided instructions.
8.   Service calls to correct the installation of your appliance or to instruct you how to use your appliance.
9.   Expenses for making the appliance accessible for servicing, such as removal of trim, cupboards, shelves, etc., which are not a part of the appliance when it is shipped from the factory.
10.  Service calls to repair or replace appliance light bulbs, air filters, water filters, other consumables, or knobs, handles, or other cosmetic parts.
11.  Pickup and delivery costs; your appliance is designed to be repaired in the home.
12.  Surcharges including, but not limited to, any after hour, weekend, or holiday service calls, tolls, ferry trip charges, or mileage expense for service calls to remote areas, including the state of Alaska.
13.  Damages to the finish of appliance or home incurred during transportation or installation, including but not limited to floors, cabinets, walls, etc.
14.  Damages caused by: services performed by unauthorized service companies; use of parts other than genuine Electrolux parts or parts obtained from persons other than authorized service companies; or external causes such as abuse, misuse, inadequate power supply, accidents, fires, or acts of God.

**DISCLAIMER OF IMPLIED WARRANTIES; LIMITATION OF REMEDIES**

CUSTOMER'S SOLE AND EXCLUSIVE REMEDY UNDER THIS LIMITED WARRANTY SHALL BE REPAIR OR REPLACEMENT AS PROVIDED HEREIN. **CLAIMS BASED ON IMPLIED WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO ONE YEAR OR THE SHORTEST PERIOD ALLOWED BY LAW, BUT NOT LESS THAN ONE YEAR.** ELECTROLUX SHALL NOT BE LIABLE FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES SUCH AS PROPERTY DAMAGE AND INCIDENTAL EXPENSES RESULTING FROM ANY BREACH OF THIS WRITTEN LIMITED WARRANTY OR ANY IMPLIED WARRANTY. SOME STATES AND PROVINCES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, OR LIMITATIONS ON THE DURATION OF IMPLIED WARRANTIES, SO THESE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU. THIS WRITTEN WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS. YOU MAY ALSO HAVE OTHER RIGHTS THAT VARY FROM STATE TO STATE.

**If You Need Service**

Keep your receipt, delivery slip, or some other appropriate payment record to establish the warranty period should service be required. If service is performed, it is in your best interest to obtain and keep all receipts. Service under this warranty must be obtained by contacting Electrolux at the addresses or phone numbers below.

This warranty only applies in the USA, Puerto Rico and Canada. In the USA and Puerto Rico, your appliance is warranted by Electrolux Major Appliances North America, a division of Electrolux Home Products, Inc. In Canada, your appliance is warranted by Electrolux Canada Corp. Electrolux authorizes no person to change or add to any obligations under this warranty. Obligations for service and parts under this warranty must be performed by Electrolux or an authorized service company. Product features or specifications as described or illustrated are subject to change without notice.

| USA | Canada |
|---|---|
| 1-877-435-3287 | 1-800-265-8352 |
| Electrolux Major Appliances North America | Electrolux Canada Corp. |
| P.O. Box 212378 | 5855 Terry Fox Way |
| Augusta, GA  30907 | Mississauga, Ontario, Canada  L5V 3E4 |

# EXHIBIT 3

# MAJOR APPLIANCE WARRANTY

Your appliance is covered by a one year limited warranty. For one year from your original date of purchase, Electrolux will pay all costs for repairing or replacing any parts of this appliance that prove to be defective in materials or workmanship when such appliance is installed, used and maintained in accordance with the provided instructions.

**Exclusions**   This **warranty does not cover** the following:

1. Products with original serial numbers that have been removed, altered or cannot be readily determined.
2. Product that has been transferred from its original owner to another party or removed outside the USA or Canada.
3. Rust on the interior or exterior of the unit.
4. Products purchased "as-is" are not covered by this warranty.
5. Food loss due to any refrigerator or freezer failures.
6. Products used in a commercial setting.
7. Service calls which do not involve malfunction or defects in materials or workmanship, or for appliances not in ordinary household use or used other than in accordance with the provided instructions.
8. Service calls to correct the installation of your appliance or to instruct you how to use your appliance.
9. Expenses for making the appliance accessible for servicing, such as removal of trim, cupboards, shelves, etc., which are not a part of the appliance when it is shipped from the factory.
10. Service calls to repair or replace appliance light bulbs, air filters, water filters, other consumables, or knobs, handles, or other cosmetic parts.
11. Surcharges including, but not limited to, any after hour, weekend, or holiday service calls, tolls, ferry trip charges, or mileage expense for service calls to remote areas, including the state of Alaska.
12. Damages to the finish of appliance or home incurred during installation, including but not limited to floors, cabinets, walls, etc.
13. Damages caused by: services performed by unauthorized service companies; use of parts other than genuine Electrolux parts or parts obtained from persons other than authorized service companies; or external causes such as abuse, misuse, inadequate power supply, accidents, fires, or acts of God.

**DISCLAIMER OF IMPLIED WARRANTIES; LIMITATION OF REMEDIES**

CUSTOMER'S SOLE AND EXCLUSIVE REMEDY UNDER THIS LIMITED WARRANTY SHALL BE PRODUCT REPAIR OR REPLACEMENT AS PROVIDED HEREIN. CLAIMS BASED ON IMPLIED WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO ONE YEAR OR THE SHORTEST PERIOD ALLOWED BY LAW, BUT NOT LESS THAN ONE YEAR. ELECTROLUX SHALL NOT BE LIABLE FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES SUCH AS PROPERTY DAMAGE AND INCIDENTAL EXPENSES RESULTING FROM ANY BREACH OF THIS WRITTEN LIMITED WARRANTY OR ANY IMPLIED WARRANTY. SOME STATES AND PROVINCES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, OR LIMITATIONS ON THE DURATION OF IMPLIED WARRANTIES, SO THESE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU. THIS WRITTEN WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS. YOU MAY ALSO HAVE OTHER RIGHTS THAT VARY FROM STATE TO STATE.

**If You Need Service**   Keep your receipt, delivery slip, or some other appropriate payment record to establish the warranty period should service be required. If service is performed, it is in your best interest to obtain and keep all receipts. Service under this warranty must be obtained by contacting Electrolux at the addresses or phone numbers below.

This warranty only applies in the USA and Canada. In the USA, your appliance is warranted by Electrolux Major Appliances North America, a division of Electrolux Home Products, Inc. In Canada, your appliance is warranted by Electrolux Canada Corp. Electrolux authorizes no person to change or add to any obligations under this warranty. Obligations for service and parts under this warranty must be performed by Electrolux or an authorized service company. Product features or specifications as described or illustrated are subject to change without notice.

**USA**
**1.800.944.9044**
Frigidaire
P.O. Box 212378
Augusta, GA 30907

**Canada**
**1.800.265.8352**
Electrolux Canada Corp.
5855 Terry Fox Way
Mississauga, Ontario, Canada
L5V 3E4

31

# EXHIBIT 4



# Use & Care Guide
French Door Bottom Freezer/Refrigerator

# Guia de Uso y Cuidado
Refrigerador con congelador inferior de puerta doble

# Guide d'utilisation et d'entretien
Réfrigérateur à portes françaises/Congélateur en bas



## ⧉ Electrolux

241940002  March 2009

# Automatic Ice & Water Maker/Dispenser  19

## Priming the water supply system

### ⚠ CAUTION

**For proper dispenser operation, recommended water supply pressure should fall between 30 psi and 100 psi. Excessive pressure may cause water filter to malfunction.**

1  Begin filling the tank by pressing and holding a drinking glass against the water dispenser paddle.

2  Keep the glass in this position until water comes out of the dispenser. It **may take about 1½ minutes.**

3  Continue dispensing water for about three (3) minutes to flush the system and plumbing connections of any impurities (stopping to empty the glass as necessary).



### 📧 NOTE

The water dispenser has a built-in device that shuts off the water flow after three (3) minutes of continuous use. To reset this shutoff device, simply release the dispenser paddle.

## Ice maker operation & care

After the refrigerator is installed properly and has cooled for several hours, the ice maker can produce ice within 24 hours. It can completely fill an ice bin in about eight (8) hours.

The ice maker produces approximately nine (9) pounds of ice every 24 hours depending on usage conditions.

### ➡ IMPORTANT

Your ice maker is turned on at the factory so it can work as soon as you install your refrigerator. If you cannot connect a water supply, set the ice maker's On/Off icon to Off and turn off the water supply valve; otherwise, the ice maker's fill valve may make a loud chattering noise when it attempts to operate without water.

### Turning the ice maker on and off

Ice production is controlled by the ice maker's **On/Off** icon on the control panel. Press and hold the "Ice Off" icon for three (3) seconds to turn the ice maker "ON" or "**OFF**". Where the ice maker is "OFF" the red LED above the icon will be illuminated.



### ➡ IMPORTANT

Turning off the ice maker will result in existing ice melting in the bin.

### ➡ IMPORTANT

Turning off the ice maker will disable the ice dispenser. You will still be able to dispense water.

### 📧 NOTE

The ice maker also has a built-in plastic signal bale arm that automatically stops ice production when the ice bin is full. This signal arm should not be used to manually stop the ice maker.

### Using the ice maker after installation

Before making ice for the first time, you'll want to prime the water supply system. Air in new plumbing lines can result in two (2) or three (3) empty ice maker cycles. Furthermore, if the system is not flushed, the first ice cubes may be discolored or have an odd flavor.

### ➡ IMPORTANT

On occasion, unusually small disc-shaped ice may be noticed in the bucket or in dispensed ice. This could occur in normal operation of the ice maker. If you start seeing these more frequently, it may be an indication of low water pressure or the water filter needs to be replaced. As the water filter nears the end of its useful life and becomes clogged with particles, less water is delivered to the ice maker during each cycle. Remember, if it's been six (6) months or longer since you last changed your water filter, replace the water filter with a new one. Poor quality household water may require the filter to be changed more frequently.



# EXHIBIT 5









# EXHIBIT 6



Stuart M. Eppsteiner (CA SBN 098973)
Email: sme@eppsteiner.com
Andrew J. Kubik (CA SBN 246902)
Email: ajk@eppsteiner.com
**EPPSTEINER & FIORICA ATTORNEYS, LLP**
12555 High Bluff Dr., Ste. 155
San Diego, CA 92130
Tel. (858) 350-1500
Fax (858) 350-1501

Counsel for Plaintiff and the Class

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

PATTY NEMETH,

    PLAINTIFF,

    vs.

ELECTROLUX HOME PRODUCTS, INCORPORATED,

    DEFENDANT.

) Case No.
)
) **CLRA VENUE DECLARATION**
)
)
)
)
)
)
)
)

I, Patty Nemeth, declare as follows:

1. I am a named plaintiff in this litigation.

2. I have personal knowledge of the matters set forth below except to those matters stated herein which are based on information and belief, which matters I believe to be true.

3. If called as a witness I could and would competently testify to the matters included herein.

4. I am informed and believe that venue is proper in this Court under California Civil Code § 1780(d) based on the fact that the transaction at issue, or a substantial portion thereof, occurred in this district.

0

DECLARATION OF PATTY NEMETH

164156

1       I declare under penalty of perjury under the laws of the state of California that the

2   foregoing is true and correct and that this declaration was executed on May 5, 2011 in Laguna

3   Niguel, California.

4

5

6                                           By: _Patty Nemeth_

7                                               Patty Nemeth

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF PATTY NEMETH